seated. Our last case this morning will be Herrera v. Finan, Mr. Lopez. We'll be glad to hear from him. Good morning, Your Honor. My name is Berth Lopez. I am here on behalf of Ms. Angelica Rocha Herrera from the Mexican-American Legal Defense and Education Fund. I'll get right into it, Your Honors. The commissioners of the South Carolina Commission on Higher Education enforce statewide financial aid rules that invidiously discriminate against United States citizens on the basis of their parents' immigration status by presumptively – Let me ask you before you get too far. Has Ms. Herrera graduated from college? Yes, Your Honor. She has graduated from college. So in that circumstance, is this case moot? Your Honor, it is not moot. There is still the question of the damages that she sustained by being required to step down from the teaching fellowship. But do you agree that as to equitable relief, as to the request for an injunction and declaratory relief, prospective relief, the case is moot? The only thing in front of us is the damages claim? Your Honor, we do not agree that the case is moot. This is a type of case that can evade review. Certainly, any fix by the commissioners here is just a voluntary cessation of the harm. But it can't – the presumption can't be applied to her again? The presumption certainly can be applied to her again if she were to apply for a graduate school, which she's expressed that interest. Is there anything in the complaint that alleges that she's planning to apply to graduate school and that if she does, she will have to be re-designated a state resident given that she's already been designated a resident? Your Honor, no, there is not. However, this is the type of case, because of the nature of time it takes to get through, that will be capable of evading review. But that exception only counts when the name plaintiff – the only plaintiff – this isn't a class action. It's not as though we can worry about what might happen to someone else. We can only worry about what might happen to her. And that exception doesn't apply unless the harm – there's a reasonable probability that this same harm will be applied to her again. Yes, Your Honor. That is not in the complaint. It is developed along the way. That much is true, Your Honor. But it is your position that she plans to apply to graduate school? Yes, Your Honor. And she plans to apply to be re-designated a resident for purposes of state scholarship availability? You have to be re-designated? Yes, Your Honor. It would be a separate application process. She's not in school right now, so she would have to go through an application process, which as I understand, would require her to – None of that's in the record, correct? No, Your Honor, it is not. I would ask counsel if they would just to simply supplement the record with a 28-J letter affirming that Ms. Herrera has graduated from college. Yes, Your Honor. Well, let me ask you before we leave that topic, setting aside the declaratory and injunctive relief that would seem to be barred under Bunning v. Mellon, in reading over your brief, I only see one mention of damages, which is on page 3, which asks the court to determine the proper measure of damages. But I don't see anywhere else in your brief that you give any argument, any analysis. Even under your standard of review, you only reference injunctive relief standard of review. What argument have you made in your brief with respect to damages? Well, Your Honor, with respect to damages, the district court granted summary judgment on that question. It was briefed below. Certainly, there is – But I'm asking what your argument is in your brief that says that damages is before us and the basis for that. Your Honor, the basis for that is that there is an open question as – well, Your Honor, it's not in our brief. Okay. Your Honor, with respect to the district court's summary judgment on this decision on commissioner liability, the district court committed error in failing to hold that the commissioners themselves can be liable for enforcing the presumption of ineligibility that applies. The federal courts have the authority to enjoin officers from enforcing unconstitutional policies as long as there is some connection between the enjoin and the officer. What's required by some connection in the case law is either enforcement authority or supervisory authority. And here we have both the commissioners who apply this presumption of ineligibility bind the residency officers in the colleges to follow their rules. Not only that, they have an enforcement hammer. They can review decisions to grant a life scholarship which uses the residency rules and audit and claw back monies. Ordinarily in Section 1983 cases, there isn't – and I'm going to put aside any legislative immunity question for the time being. There ordinarily is no basis for recovery under a respondeat superior theory. And our case law seems to be pretty specific that there must be some affirmative showing that the official charged here, the individual commissioners of the South Carolina agency, not the college officials who actually administered and determined residency eligibility, that those folks have to personally have acted in deprivation of allegation in the complaint. And you're proper of proof that any of these commissioners acted in a personal deprivation of the plaintiff's rights. Well, your honor, the harm here is the enforcement of a presumption that applies to Ms. Roach and to everyone like her that says that they are less likely to be South Carolina residents on the basis of their parents' immigration status. Let me ask it a different way. Do you have any allegation or proper of proof that any of the defendants acted personally with respect to the plaintiff? Your honor, under our, in the complaint, the enforcement of these policies, which the commissioners are under the statute and regulations required to do, is enough for liability here. This is like the case in Ruiz v. Robinson. Again, the commissioners in that case that are in the similar position to the commissioners here have supervisory responsibility for the state financial aid program. And I would go one further than that. In this case, we have more than just general supervisory liability, but the commissioners actually enforce the policy there. They are obligated to claw back any money that's paid out in violation of the rules. Even if we assume and credit your interpretation of what the law would be, is there any evidence or pleading that any of the commissioners personally acted with respect to the plaintiff? Your honor, there is no evidence that the commissioners named on the complaint themselves participated in a physical way. I would say that it is enough that they have this very clear duty to enforce the policy. Counselor, can I just, when you say enough, I just want to make sure I understand. Enough for damages liability or enough to get an ex parte young injunction? Enough for the ex parte young. But not enough for damages liability? Well, your honor, I think, and I cited to Pembar in brief, this is very similar to that case. In that case, the county prosecutor attempted to defend in the same way and said, look, I'm not the individual who actually committed the constitutional harm. All I did was order or advise the police officers on the ground to do it, and they did it. It wasn't me. And I would submit that the commissioners in this place stand in the place of the county prosecutor in Pembar. That was enough for... Well, in Pembar, was that a state officer who would, if he were sued in his or her official capacity, be protected by the 11th Amendment, or was that a municipal officer? Your honor, I believe it was a municipal officer. I am not saying that Pembar is binding. I think it is an illustrative example of the types of ways in which state officers can be held liable for acts that represent official acts of the government. Well, state officers would not be affected by any type of monel liability, would they? No, your honor. They would be potentially subject to qualified immunity, which was not raised here. Well, I guess... It was raised. It was raised in the defendant's answer. It wasn't raised. It wasn't raised in the briefing, your honor. Your honor, with respect to the equal protection analysis, I submit that the district court committed error by failing to apply the appropriate level of scrutiny. Heightened scrutiny is the appropriate level here. This is apparent from the Supreme Court's cases that deal with discrimination against illegitimate children. Let me ask one more question, counsel. I'll try to stop interrupting your argument after that. Did I take it from your most previous discussion that you're asserting a supervisory liability claim against defendants here? No, your honor. This is a... Through PEMBAR, this is a way of answering the question of, well, because the commissioners themselves weren't personally making the decision, they are not liable. And again, it's not the actual decision that's the focus... Not in a circumstance that involves a state officer as opposed to a municipal officer. Your honor, to my knowledge, it has not. Your honor, with respect to the commissioner liability point, the last thing I'll say to this is, this is not a supervisor... I'm sorry, this is not a respondent superior theory of liability. The harm here is that the commissioners have developed and enforced a mechanism that citizens are not residents of the state of South Carolina. And through their enforcement powers, which they are under the regulations required to enforce and which the residency officers don't have the authority to deviate from, they drive that decision. So it's not a vicarious liability theory. It's very much a theory based on their enforcement of the policy. Turning to the Equal Protection Clause, it's heightened scrutiny is the appropriate level of review here. This is apparent from the Supreme Court cases that deal with discrimination and burdens to illegitimate children. Both in Clark and Weber, the court invalidated burdens to children on the basis of their parents' illegitimacy. Weber Workman's Compensation Scheme and Clark v. Jeter, I believe was a burden to establishing paternity for illegitimate children. I think the principle here is very clear. It's a principle that the Second Circuit also followed. In Lewis v. Thompson, which is we don't, government action that punishes students and children on the basis of their parents' actions must at least pass heightened scrutiny and it doesn't here. I would also point to Plyler v. Doe. I think this illustrates this principle in a way that's most persuasive. If even Plyler, the Supreme Court, was willing to protect undocumented children on the basis of that they have no fault for the misdeeds of their parents, then certainly here a United States citizen who is otherwise eligible for this program should not be punished. Your Honor, the district court also failed to recognize the right of familial association Ms. Rocha had in living with and depending on her parents. Both the Ninth and Tenth Circuit have recognized a loss of companionship for an adult child by the parent to the extent that the district court- Can I ask you a question about this? This is what I keep running up against in this case. That seems like that would have been a really good argument for you before 2015 when I gather when you first started litigating this case the theory was that this was not a rebuttable presumption. It was a per se rule and therefore the only way she could get residency status would be to become independent of her family. But that's clearly not the case now. Now you can get residency status. You don't just separate yourself from your family. You just have to show that you live in South Carolina. So it just seems to me that your case really changed in 2015 with this guidance and you kind of won your case. You got your guidance and your client became a resident. And I just don't see how in particular this argument continues to track once we're talking about a rebuttable presumption. Where's the pressure to become independent of her family? She just has to show up with a few proof, a driver's license, proof of residency. She's good to go. Your Honor, there are a few answers to that question. I'm running out of time but I will take the first. This court does not recognize the de minimis harm for a constitutional harm. I'm not asking that. I'm just saying as a practical matter, where is the pressure on her to become independent of her family? The pressure on her, Your Honor, is that she has to declare herself independent in order to meet the presumption and if she does that She doesn't. She has to bring some proof that she's domiciled in South Carolina. Why won't she just do that instead? Because in order to rely on her parents, Your Honor, in order to base her eligibility on her parents, she would have to give up the support that comes with that choice. You're saying that even under the rebuttable presumption, the guidance issued in 2015, the only way that a child, a dependent of her family, should be able to have undocumented parents who live in South Carolina, the only way that person can get residency status is to declare independence from her parents. Yes. That's how you read the 2015 guidance. It's not enough that she shows up with those six documents they list to show that she's domiciled in South Carolina. Your Honor, my understanding is if I am a student who is dependent on anyone, if that person is undocumented, then I cannot rely on their... Right, but you can show up with, I can't remember what the documents are, a driver's license and a gas bill and that will be enough to show that you are... Didn't your client do that? She attempted to do that, Your Honor, at the time. The fact that she's even required to do that when similarly situated... Well, didn't your client do all of these suggestions in this guidance and wasn't she then deemed to be a resident? She was after two years, Your Honor. Your Honor, my time has expired. Thank you very much. Mr. Lindeman. May it please the Court. Excuse me. My name is Andrew Lindeman. I represent the appellees who are the members, the commissioners, both in their individual and official capacities, the commissioners of the Commission on Higher Education in South Carolina. Just to touch on some of these threshold issues that have already come up in oral argument. First of all, as far as any type of perspective relief, we raised the issue of mootness based upon the passage of time and obviously when we briefed it, I knew we were probably at the end of Ms. Roach's fourth year of college at Converse College and it's now been conceded that she has graduated. I believe that the Allen v. Bunning court point blank said, quote, when students challenge the constitutionality of school policies, their claims for declaratory injunctive relief generally become moot when they graduate. Can I just ask a question? It seems, right, that she's graduated and the language applies just right on its face, but even if she hadn't graduated, once she's been determined to be a state resident, isn't that sort of the last event? Even if she had two weeks until graduation? Absolutely. I think based upon, and I forget which of you mentioned it, but after the guidance was issued, and the guidance of course was issued in order to provide essentially that, guidance to the people who actually make the decisions, which are the residency officials at each of the colleges and universities in South Carolina. At that point in time, Converse College recognized the residency officials there, recognized Ms. Roach as an in-state student, and she was provided not just her state-sponsored scholarships, her life scholarship for the future, for the next two years she was also provided it retroactively. And that's covered in the record in supplemental declarations that were filed by Ms. Roach. This is sort of a tangential question, but would you say that the plaintiff became a prevailing party in 2015 for purposes of attorney's fees? Absolutely not, Your Honor. Oh, not? No, not. Absolutely not. Why not? She got everything she was looking for, as you just said, cases over, she got her guidance, she became a resident. But it didn't come as a result of any type of judgment or settlement, and obviously that's a separate issue. We don't recognize, I'm blanking out on the case name, it's a case that came out of the Fourth Circuit to the U.S. Supreme Court that basically recognized that it requires a settlement or judgment in order to qualify as a prevailing party. And obviously that issue, I mean, if they pursue attorney's fees, that's something that we would take up in the district court. And I apologize, I'm blanking out on the name of the decision. But no, we are certainly not conceding that they're a prevailing party. But it did moot out her claim, I would agree with that. Now, to the extent that the plaintiff claims that she lost the ability to go through the CIRA teaching fellows program, which was not applicable at Converse College, it was applicable at USC Upstate, which is one of the initial schools that she applied to, to the extent that they're still claiming a money damages claim, I'll be frank with the court, and I think my brief spells that out. I did not read the appellant's opening brief as asserting any type of claim for money damages. I took that briefly. I understood the opposing counsel conceded that he made no damages argument. Right. And obviously, to the extent that he did, the ruling by the district court on legislative immunity would certainly apply. Judge Harris asked a question about qualified immunity and I would represent to the court, and I know the memorandum of law are not in the joint appendix, but they're obviously in the record. I very clearly raised Harlow qualified immunity as a defense, not just in the answer, but at summary judgment. It was clear Judge Hendricks didn't need to reach that particular issue. To the extent that the money damages claim is still valid for consideration, and a lot of these other numerous defenses don't bar it, certainly qualified immunity would apply in this case, and we are not waiving that whatsoever. There is no law that would guide similarly situated commissioners on this particular matter. The only case that is remotely close is a district court case from Florida, the Ruiz case that came out right around the same time that these issues were being dealt with. So I did want to make that clarification. Qualified immunity was certainly raised below. We are not abandoning that issue. Judge Hendricks just didn't need to reach it and I don't believe this court needs to reach it. For the reasons said, number one, the plaintiffs sued the wrong part. They sued the party who enacted the regulations. The commissioner's sole involvement in this particular case is based upon the authority they were given by the South Carolina General Assembly. They enacted the two regulations that are being challenged here. Those regulations provide for a rebuttable presumption. We've taken a position from the very beginning of this litigation that it was a rebuttable presumption. They opposed that. Judge Hendricks agreed with us it was a rebuttable presumption and that's not being challenged on appeal any longer. Is it your view, and it would help me with understanding this, that I understand the argument that you can't sue the commissioners for damages, but you don't think an ex parte young injunction could go, it's their regulation, they're enforcing it. Isn't that just kind of standard, ex parte young, so you get an injunction and tell them to stop enforcing? I don't think so. And this case presents the unusual facts that fall, in my opinion, squarely within the Supreme Court of Virginia versus Consumers Union case. That if the acts of the, even executive body, even a non-legislative per se body, if the acts that are being challenged is purely quasi-legislative in nature, i.e. the adoption of regulations. Not adoption, just stop enforcing them. We're not an injunction requiring you to repeal them, not an injunction requiring you to pass a new law. Isn't that always what ex parte young looks like? But in the South Carolina statutory scheme that was created, and that's the part that the General Assembly did, the statute, and in fact 59.112.80 is what I'm relying on. The authority to administer and enforce this scheme falls on the residential, excuse me, the residency officials at the individual school. But really? So I take the position, and I think the record bears it out, and certainly the district judge agreed with us, that there is no enforcement authority by the individual commissioners. Was there ever an ex parte young type argument made in the district court? I do not believe that there was, because obviously the correct party, even to make an ex parte young type argument, if you were challenging actions by the commission itself, would be the executive director or one of the officials who would be charged with enforcing or administering that aspect of the regulatory scheme. In this case, the commissioners themselves do not run the commission. They are not the services of an executive director who then retains the staff, and that's how that process works. So that's a different argument. It's not that they would bring an ex parte, your position is you want to bring a case for an ex parte young injunction. It's not that you have to go around and sue every single financial aid officer at every college. It's that you have to sue the executive director of the commission and not the commissioners. Well, I think that potentially that would be an appropriate person to sue, but at the same time, Judge Harris, I think the best party, quite frankly, is the residency official at the school that is being implicated. Imagining a class action. And I don't think the challenge, the constitutionality, certainly for an as applied challenge, you don't need to sue every single, all 33 residency officials in the state of South Carolina. And the facial challenge, Judge Hendricks ruled in our favor on that, and they haven't appealed it. So what we're faced with at most is an as applied challenge. In this particular case, that would have been, that would have required, it would have been a lot easier in suing ten different commissioners. You would have sued the residency official who made the decision on Ms. Roach's application at USC Upstate. What if it were class action bringing the exact same as applied challenge as to this class of plaintiffs? You can't, you wouldn't say you have to go get an ex parte young injunction against every financial aid officer. Right then, you're telling me it would be the director of the commission. I'm telling you, it would probably, I don't want to concede that point in the future if I ever have to defend that. But it would seem to make sense that the executive director is the person who's charged with the administration and enforcement of those responsibilities that the commission itself has. Again, to draw a distinction from those responsibilities provided by the statutory scheme to the residency officials themselves. But the bottom line is, in this particular case, the parties that they chose to sue were the commissioners. The evidence in the case is very clear. The only role the commissioners played in any of this was they enacted the regulations and they didn't amend them or stop enforcing them or repeal them. And at most, what they did is then they provided this guidance, which is also quasi-legislative. The evidence was very clear that Ms. Roach had never dealt with any of the commissioners. We also asked the residency officials at both USC Upstate and Converse, did they have any interactions with any of the ten commissioners? They did not. Plaintiffs did not pursue this claim. They did not take a single deposition of one of the commissioners. And simply, and I think Judge Hendricks' rulings are correct and shows somewhat her frustration that they didn't sue the correct party. And ultimately, that resolves not just the money damages claim, but also under the rationale of Supreme Court of Virginia versus Consumers Union, that dealt with any type of prospective relief as well. And again, I can address the merits of the equal protection claim. I believe and submit strongly to this court that the use of a rebuttable presumption in this circumstance is absolutely appropriate and does not run afoul of the equal protection clause. I believe to the extent that there was any ambiguity in how it was the law and the regulations was being applied in South Carolina, we cleared that up with that guidance. Certainly, the plaintiff herself has benefited from that. I would concede that point. She received her in-state status. So I don't know that there is an actionable claim here or one where a judiciable claim, I guess I should say. But to the extent that there is, I do not see that there is a violation of equal protection whatsoever. Touching briefly on substantive due process, I think Judge Harris noted correctly that to the extent there is even a right to familial association that would be recognized by this court under the substantive due process clause as opposed to under the First Amendment or some other more specific text of the Constitution or the Bill of Rights, that quite frankly, that's not at issue at play at this point. Clearly, Ms. Rocha was not required to separate herself from her parents and establish herself as an independent person in order to rebut the presumption. That's why the rebuttable presumption works and works successfully as it does. And I would add, also clearly distinguishes the South Carolina scheme from the Florida scheme in Ruiz v. Robinson, where clearly in Florida, for all practical purposes, as Judge Hendricks noted, they created a irrebuttable presumption or an assignment, an automatic assignment of the residency of the parent to the U.S. citizen student who is dependent on that parent with no exceptions, no ability to rebut it. South Carolina is completely different because we allow that situation to be rebutted. Frankly, as we also argued and Judge Hendricks also correctly found, the South Carolina scheme does not target parents who are undocumented or students with undocumented parents. The statute itself and the regulations and the rebuttable presumption are designed to deal with anyone who is dependent on a nonresident parent. And it applies in situations where people are coming from out of state or have parents who are from other countries. It can also end up implicating very unique factual situations such as kids who are in foster care or kids who are orphans or kids who are relying on someone who is not a parent or guardian but is out of state, but at the same time the student is able to show that they were residents of South Carolina. So there are a lot of different factual scenarios where this comes into play. There is clearly a legitimate governmental interest and basis for this. It is recognized by the Supreme Court in the Gladys case. So I would submit to this Court for numerous bases as found by the District Court in a very well-written and well-reasoned opinion, I would submit that the statutory scheme that has been created in South Carolina, the use of a rebuttable presumption in this instance, is constitutional to the extent the Court even needs to reach that issue because quite frankly, I think mootness takes care of this case and certainly if mootness doesn't, the fact that they failed to sue an appropriate party and the existence of legislative immunity for both the money damages claims and prospective relief claims bars this claim as well. I see my time is not up. If the Court doesn't have any further questions, I will yield that time. Thank you very much, Mr. Glenderman. Mr. Lopez, you've got some time left in rebuttal. Thank you, Your Honor. I just wanted to address a few points for Mr. Glenderman's presentation. The first is with respect to the Ruiz v. Robinson case, the argument that the scheme can't violate the Constitution because it's only a rebuttable presumption I think is wrong. Whether it's a wall or a hurdle that you have to overcome, it is still a burden that is placed on United States citizens and not their similarly situated peers. Second, with respect to the nature of the harm here, again, we are not talking about the line residency determination. Certainly the line residency officers could be appropriate parties.  The line officers, the residency officers. They certainly could have been appropriate parties. But again, this is liability based on the Commissioner's enforcement of this policy. The case cited in the brief, the Supreme Court of Virginia case, I think extends legislative immunity for a rulemaking function. But I believe that same case goes on to find liability appropriate when we're talking about the court in that regards authority to begin proceedings to sanction attorneys. And so again, with respect to the legislative component, this is not a request for liability for making rules, but it's liability for enforcing them. Your Honor, with respect to... No, Your Honor, that's actually all. Thank you, Your Honor.
judges: G. Steven Agee, Barbara Milano Keenan, Pamela A. Harris